## *In re* OPINION OF THE JUDGES.

### *In re* ROBERT W. BLAKELY.

No. A-3912—Opinion Filed Feb. 3, 1921.

(195 Pac. 146.)

Opinion of the judges in the matter of the conviction of Robert W. Blakely for murder, rendered in response to the request of the Governor of the state.

Hon. J. B. A. Robertson, Governor of the State of Oklahoma—Sir:

In response to your official communication of January 29, 1921, addressed to the judges of this court for an opinion (as provided by section 5969, Rev. Laws) in the matter of the conviction of Robert W. Blakely in the district

court of Muskogee county of the crime of murder and judgment and sentence, rendered November 27, 1920, in pursuance of the verdict, that he suffer death by electrocution on February 25, 1921, we hereby respectfully submit the following:

## Opinion of the Judges.

DOYLE, P. J.    An inspection of the record discloses that the information filed in the district court of Muskogee county on September 25, 1920, charges Robert W. Blakely with the murder of one Effie May Allford, alleged to have been committed in said county on or about the 13th day of September, 1920, by shooting the said Effie May Allford with a pistol; that on the 5th day of November, 1920, the defendant was arraigned in open court, B. B. Wheeler, presiding judge, and by his attorney offered to enter a plea of guilty of manslaughter in the first degree, which plea was not accepted; on the following day the defendant asked that E. A. Summers, another judge of said court, be assigned to sit and preside in the trial of said cause; that on the 10th day of November, 1920, the said cause was called for trial, E. A. Summers, presiding judge, the defendant present in person and by his attorneys, and the state by the county attorney, and both parties announced ready for trial; a jury of 12 good and lawful men were duly impanelled and sworn to try said cause and a true verdict render according to the law and the evidence.

Whereupon the state introduced its evidence and rests. Thereupon counsel for the defendant requested and the court granted time in which to confer with the defendant, after which his counsel announced that "the defendant rests."

The court instructed the jury upon the law of the case, which charge of the court is incorporated in the record in full. It appears that no objection was made or exception taken to the instructions given by the court. After the argument of counsel the jury retired under a sworn bailiff to consider their verdict, and on the same day returned in open court the following verdict:

"We, the jury in the above-entitled action, duly impanelled and sworn, upon our oaths find the defendant guilty of the crime of murder as charged in the information and fix his punishment at death. J. J. Barrett, Foreman."

Which verdict was duly filed on said date in the office of the court clerk. Thereafter, on the 27th day of November, 1920, the said defendant, Robert W. Blakely, was sentenced in open court in pursuance of the verdict rendered by the jury to suffer death by electrocution in the state penitentiary on the 25th day of February, 1921. Thereafter on the 1st day of December, 1920, there was filed with the court clerk a death warrant, signed by E. A. Summers, district judge, in due form and duly attested, commanding the warden of the state penitentiary at Mc-Alester to accept the said defendant, Robert W. Blakely, From the sheriff of Muskogee county, and closely confine and imprison the said defendant within the walls of the state penitentiary until the 25th day of February, 1921, and upon said last-mentioned date to put to death the said defendant, Robert W. Blakely, by electrocution in the manner provided by law.

Upon the trial of the defendant the uncontradicted evidence established that on the day alleged he shot and killed Effie May Allford, his stepdaughter, at his home near Brushy Mountain. There was a gunshot wound in her

neck; two just below the left breast; one in the abdomen; and one in the left wrist. The defendant's family consisted of his wife and four daughters, ages 12, 9, 7, and 2 years old. The deceased and an elder sister were also inmates of the family. The deceased had a baby several months old. There was testimony showing that the defendant had stated that he was the father of this baby, and that shortly before the homicide he entered the room of the deceased with a pistol in his hand, and in the presence of his wife and the sister of the deceased, took the baby, saying to deceased that if she did not come to his room that night he was going to blow her heart out; that the deceased went to his room, and after staying there a while brought her baby back to her room; that two or three days later the deceased went to Muskogee and swore to a complaint charging the defendant with rape. The defendant went on the scout, returning at times to his home. He on these occasions expressed his intention to kill her, and one time attempted to shoot her, but his wife scuffled with him and the shot missed her.

The 12 year old daughter of the defendant was the only person who saw the killing and who testified as to what took place at the time. She testified:

"My mother and Maud went to Muskogee, leaving Effie, her baby, and the other little children and myself and Daddy at home. Effie said she was going to the store to get some thread. Daddy told her to let me go. She said, 'No; I want to go myself.' So she got ready and started to the front door. Daddy he ran and closed it. Then she went to the back door. Daddy got his gun, and I commenced to holler, and he shot her in the left wrist. She jumped and said, 'I won't go.' He said, 'No; you won't go;' and I grabbed hold of the gun. He pulled it out of my hand and shot her again. She staggered a little bit

and said, 'No, Bob; I won't go.' He shot again and then he went away. I ran out to where Effie was, and she told me to go to Mrs. Whitewaters and tell her to come over. I went. She was just dying when I got back."

The officer who arrested the defendant testified that—

"He said, 'I am the man that shot her; is she dead?' I said, 'Yes; that is the report that came to me;' and he said, 'I am glad of it; I am ready to die too now, if she is dead'."

The defendant made several voluntary confessions, as shown by the testimony, in substance as follows:

"This girl wanted to go to the store, and I was afraid she would call the officers, and I tried to keeep her from going. She insisted on going, and finally she got up and started to the front door. I beat her to it. Then she went to the back door. We scuffled there a little bit, and she finally jumped out. I said, 'Effie, don't go,' and I shot. She turned and said, 'I won't go.' I had gone so far that I knew it would not do any good to stop, so I made up my mind that I would finish it, and I aimed at her heart and shot twice. She reeled, and then I fired again."

From this abbreviated summary of the evidence given on the trial it will be seen that the defendant had been guilty of an atrocious crime, the culmination of which was the deliberate and premeditated murder of his victim.

It has uniformly been held by this court that the statute (section 5969, Rev. Laws) contemplates an advisory opinion where an appeal has not been taken in a capital case, and where the death penalty has been assessed. The questions presented are: Has there been an observance of all the formalities of law essential to the taking of human life, or has the trial, conviction, and sentence of death been in accordance with the law of the land?

After a full and careful examination of the record and transcript, we are unable to find any error which prejudices the rights of the defendant. The information correctly charges the crime of murder, the instructions as given by the court fully and correctly state the law of the case, and there can be no doubt as to the sufficiency of the evidence to support the verdict and judgment of conviction.

Under the provisions of our Code of Criminal Procedure, the time for appeal will not expire until May 27, 1921. In the meantime, under the statute (section 5970, Rev. Laws), the Governor has sole power to reprieve or suspend the execution of the death sentence pronounced against this defendant until such time as an appeal may be perfected, or until a day beyond the time provided by statute in which an appeal may be taken, to wit, six months from the rendition of the judgment. It is a matter entirely discretionary with you to grant such reprieve or suspension of this sentence in order to permit the defendant, if he should hereafter see fit to do so, to take an appeal from this judgment. *In re Opinion of the Judges*, 17 Okla. Cr. 369, 189 Pac. 198; *In re Opinion of the Judges*, 18 Okla. Cr. 20, 192 Pac. 597.

It seems impossible to review the record and resist the conclusion that the defendant is guilty of a most brutal murder, well meriting the **extreme penalty assessed by the jury.**

Upon the record before us we are of opinion that by a fair and impartial trial the defendant has been adjudged to suffer the just penalty of the law.

MATSON and BESSEY, JJ., concur.